**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SPRINTRAY, INC., )<br><br>Plaintiff, )<br>  )<br>  v. )<br>  )<br>SHENZHEN ANYCUBIC TECHNOLOGY )<br>CO. LTD., ANYCUBIC INNOVATION US )<br>INC., and ANYCUBIC TECHNOLOGY (US) )<br>LTD., )<br>  )<br>Defendants. ) | C.A. No. _____<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff SprintRay, Inc. ("Plaintiff" or "SprintRay") files this Complaint for Patent

Infringement and Demand for Jury Trial against Shenzhen Anycubic Technology Co. Ltd.,

Anycubic Innovation US Inc., and Anycubic Technology (US) Ltd. (collectively, "Defendants

or "Anycubic") and alleges as follows:

**THE PARTIES**

1.      SprintRay, Inc. is a California corporation with its principal place of business at

2710 Media Center Drive, Suite 100A, Los Angeles, CA 90065.

2.      Shenzhen Anycubic Technology Co. Ltd. ("Anycubic Technology") is a

Chinese corporation with its principal place of business at 12-13th Floor, Building #3B, Vanke

Times Square, No. 85 Longcheng Avenue, Longcheng Street, Longgang District Shenzhen,

Guangdong 511464 China.  Anycubic Technology designs and makes 3-D printers that it offers

for sale throughout the United States, through its website and on Kickstarter.  Anycubic

Technology directly imports these 3-D printers and associated products into the United States.

Anycubic Technology also introduces products into the stream of commerce that incorporate

infringing technology knowing that they will be sold in this District and elsewhere in the United States.

3.      Anycubic Technology (US) Ltd. ("Anycubic US") is a California corporation with its principal place of business at 5319 University Dr., Suite 367, Irvine CA 92612. Anycubic Technology incorporated Anycubic US in 2022. The address of the incorporator for Anycubic US is listed as 5319 University Dr., Suite 367, Irvine CA 92612. Upon information and belief, Anycubic US imports into the United States Anycubic Technology's 3-D printers for distribution throughout the United States, introducing them into the stream of commerce in this District and elsewhere in the United States.

4.      Anycubic Innovation US Inc. ("Anycubic Innovation") is a Delaware corporation with its principal place of business at 8 The Green, Ste A, Dover, DE 19901. The address of the incorporator for Anycubic Innovation is listed as 5319 University Dr., Suite 367, Irvine CA 92612. Upon information and belief, Anycubic Technology incorporated Anycubic Innovation in 2026.

5.      On information and belief, Defendants Anycubic Technology, Anycubic US, and Anycubic Innovation are related entities that work in concert to design, manufacture, import, distribute, and offer for sale the infringing products.

## JURISDICTION AND VENUE

6.      This action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338 because this is a civil action arising under the Patent Act.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

8.    Venue is proper as to Anycubic Technology, a foreign corporation, because suits against foreign entities are proper in any judicial district under 28 U.S.C. § 1391(c)(3).

9.    Anycubic Technology and Anycubic US are subject to this Court's personal jurisdiction consistent with the principles of due process and the Delaware Long-Arm Statute, including for the reasons set forth below.  10 Del. C. § 3104.

10.    This Court has personal jurisdiction over Anycubic Innovation because it is incorporated within this District.

11.    This Court has personal jurisdiction over Defendants because Defendants regularly and continuously, either directly or through subsidiaries or intermediaries, conduct business in this District and have infringed, and continue to do so, in this District.  In addition, the Court has personal jurisdiction over Defendants because they have established minimum contacts with this District and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.  For example, Defendants initiated a campaign on Kickstarter, which is a Delaware corporation, on which Defendants offer for sale products that infringe the Asserted Patents, including selling into this District, as further described below.

## SPRINTRAY'S ASSERTED PATENTS

12.    SprintRay, Inc. was founded in 2014.  SprintRay builds and supplies end-to-end 3D printing products and ecosystems, including to dental professionals, using both cutting-edge and user-friendly technologies.  SprintRay offers a range of 3D printing solutions, including its SprintRay Pro 55S, Pro 95S and Pro 2 3D printers.

13.    On September 30, 2014, the United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 8,845,316 (the "'316 Patent"), entitled "Process and Device for Producing a Three-Dimensional Object."  The '316 Patent lists Volker Schillen and Ali El-

Siblani as its inventors.  Attached hereto as Exhibit 1 is a true and correct copy of the '316 Patent.

14.     All rights, title, and interest in the '316 Patent have been assigned to SprintRay, which is the sole owner of the '316 Patent.

15.     The claims of the '316 Patent claim specific, concrete improvements to additive-manufacturing machinery and processes—namely, improved devices for producing three-dimensional objects by solidifying a solidifiable material using a defined combination of physical components (e.g., an energy supply device, a movable object carrier, a solidifiable material carrier/provider, one or more sensors, and a controller) operating in a particular physical arrangement and performing real-time sensing and control in the build region.

16.     The claims address and provide specific solutions to long-recognized problems in resin-based 3D printing—such as unreliable layer formation and damage during separation/peel—by sensing physical conditions (including separation force, pressure/strain, and related build-region conditions) at locations indicative of those conditions in the build region and using that real-time feedback to control operation of the 3D printer.  This specific solution is a new inventive concept and was not based on technology that is conventional, routine, or well known.

17.     The claims of the '316 Patent recite tangible components and physical interactions, such as: a defined "building region" located between the object carrier and the energy supply device; a solidifiable material carrier/provider that provides material to that region (e.g., resin tank); at least one sensor that outputs a signal indicative of separation force or related physical conditions; and a controller that adjusts one or more build parameters such as object-carrier distance, movement speed, and/or tilt angle based on the sensed signal.

18.     On January 19, 2021, the USPTO issued U.S. Patent No. 10,894,355 (the "'355 Patent"), entitled "Resin Solidification Substrate and Assembly."  The '355 Patent lists Ali El-Siblani and Alexandr Shkolnik as its inventors.  Attached hereto as Exhibit 2 is a true and correct copy of the '355 Patent.

19.     All rights, title, and interest in the '355 Patent have been assigned to SprintRay, which is the sole owner of the '355 Patent.

20.     The '355 Patent claims a solidification substrate assembly used in additive manufacturing, comprising concrete physical components such as a solidification substrate, a rigid or semi-rigid support layer, a film layer positioned adjacent to that rigid layer, as well as peeling members to reduce separation forces.  They solve a specific technological problem in 3D resin printing: the difficulty of reliably separating a newly solidified layer from the underlying substrate without introducing print failures, damage, or excessive peel forces.  This specific solution is a new inventive concept and was not based on technology that is conventional, routine, or well known.

21.     On April 25, 2023, the USPTO issued U.S. Patent No. 11,633,910 (the "'910 Patent"), entitled "Resin Solidification Substrate and Assembly."  The '910 Patent lists Ali El-Siblani and Alexandr Shkolnik as its inventors.  Attached hereto as Exhibit 3 is a true and correct copy of the '910 Patent.

22.     All rights, title, and interest in the '910 Patent have been assigned to SprintRay, which is the sole owner of the '910 Patent.

23.     The '910 Patent claims a solidification substrate assembly used in additive manufacturing systems, including a solidification substrate, a rigid or semi-rigid layer positioned adjacent the substrate, a film layer that contacts the solidifiable material, and

mechanical separation components that physically separate the solidified layer from the substrate. These structural components comprise a specific technological improvement in 3D printing field to improve the mechanical detachment of cured resin layers by using coordinated mechanical structures and prevent excessive peel forces that often cause print failures or hardware strain. This specific solution is a new inventive concept and was not based on technology that is conventional, routine, or well known.

24. On June 20, 2023, the USPTO issued U.S. Patent No. 11,679,555 (the "'555 Patent"), entitled "Reservoir with Substrate and Assembly for Reducing Separation Forces in Three-Dimensional Printing." The '555 Patent lists Amir Mansouri, Huijian Tian, Hossein Bassir, Jing Zhang, and Shukun Ye as its inventors. Attached hereto as Exhibit 4 is a true and correct copy of the '555 Patent.

25. All rights, title, and interest in the '555 Patent have been assigned to SprintRay, which is the sole owner of the '555 Patent.

26. The '555 Patent claims specific, concrete improvements to three-dimensional printing. Specifically, they claim structures for use with a reservoir assembly, including a transparent or semi-transparent rigid substrate, and a permeable substrate disposed between them. The permeable substrate and the structural arrangement of these multiple layers reduce separation forces experienced during bottom-up additive manufacturing, thereby increasing print reliability. This specific solution is a new inventive concept and was not based on technology that is conventional, routine, or well known.

27. SprintRay complies with 35 U.S.C. § 287 by marking its patent-practicing 3D printers on its website. *See* Ex. 5, https://sprintray.com/patents/.

## ANYCUBIC'S INFRINGING PRODUCTS

28.    Anycubic sells products that infringe the Asserted Patents.

29.    For example, Anycubic's Photon P1 Printer ("P1") infringes the Asserted Patents as set forth below.  Anycubic describes its P1 printer as "plug & play perfection."  Ex. 6 (https://www.anycubic.com/en/Photon-P1).  The P1 printer is a 3D printer for printing using resin, which is a photosensitive material.  The P1 contains a light source at the base of the printer below the solidification substrate.  The solidification substrate is an LCD panel.  The P1 uses a resin tank to hold the resin during printing, which is comprised of a frame and transparent, permeable film at the base of the frame.  The assembled resin tank sits atop the solidification base and latches into place on two sides.

30.    Anycubic launched its Photon P1 Printer (Kickstarter version) via the Kickstarter website on December 11, 2025, with a stated goal of raising $64,031 by offering the Anycubic P1 as a "reward" in exchange for making a payment to contribute to the release and mass shipment of the P1 into the United States.  Ex. 7 at 1, 52 (https://www.kickstarter.com/projects/anycubic-official/anycubic-p1-industrial-grade-prosumer-resin-3d-printer).  Anycubic offered for sale at least 2,000 P1 printers through its Kickstarter campaign as part of several different "reward" packages.  *See* Ex. 9 *generally*.  Anycubic also offered the P1 as a single-unit add-on.  *Id.* at 4.

31.    Anycubic's Kickstarter campaign page describes the various capabilities and features of the Photon P1.  *See*, *e.g.*, Ex. 9 at 3-4, 15-16, 23.

32.    Anycubic's Kickstarter campaign page invites customers to "back" the project by pledging money at the listed price in exchange for Anycubic's promise that the customers will receive the Photon P1.  For example, as shown below, Anycubic's Kickstarter campaign page offers the standalone Photon P1 unit for $499.



Ex. 7 at 32 (showing various packages including the Photon P1 that a user can obtain in exchange for their monetary pledge including just the Photon P1 unit for $499).

33.    Anycubic's solicitation of pledges is an offer for sale.  According to Kickstarter, "[b]y launching a project on Kickstarter, a creator is inviting people to form a contract with them.  Anyone who backs a project is accepting that creator's offer, and forming that contract." Ex. 10 at 1 (https://help.kickstarter.com/hc/en-us/articles/1260805506289-A-project-I-backed-isn-t-able-to-fulfill-what-does-this-mean-for-the-backers).



Ex. 9 (https://www.kickstarter.com/projects/anycubic-official/anycubic-p1-industrial-grade-prosumer-resin-3d-printer/rewards) at 1-2 (showing that a Photon P1 printer can be obtained in the United States by pledging $499 and that over 1,000 people have ordered Photon P1 products by making a payment at this price to have "backed" the P1).

34.    In addition to the P1, Anycubic offered for sale its Dual Material Print Kit ("Dual Kit") to be used with the P1 printer, both in a reward bundle and as an optional add-on. *See e.g.*, *id.* at 7, 8.

35.    SprintRay is informed and believes that Anycubic's Kickstarter campaign ended on February 9, 2026, at which point it had received more than $1.5 million in payments for P1s from more than 2,000 "backers."  As of February 9, 2026, the Kickstarter campaign page redirects potential buyers to "Shop on Official Website," which redirects to Anycubic's website to buy the Photon P1.



Ex. 8 at 1 (https://www.kickstarter.com/projects/anycubic-official/anycubic-p1-industrial-grade-prosumer-resin-3d-printer).

36.     Now that its Kickstarter campaign concluded, Anycubic offers for sale and sells in the United States its infringing P1 printer through its website.  Upon consummation of a sale through its website to a customer located in the United States, Anycubic then imports the infringing P1 printer into the United States to deliver to the customer.



Ex. 11 (https://store.anycubic.com/products/photon-p1-resin-3d-printer).

37.     Anycubic imported its infringing P1 printers into the U.S. to distribute to influencers and beta testers in the 3D printing space to use as part of its Kickstarter marketing campaign.  *See*, *e.g.*, Ex. 7 at 10-11 (https://www.kickstarter.com/projects/anycubic-official/anycubic-p1-industrial-grade-prosumer-resin-3d-printer) (*see* "Hear From The Pros"); Ex. 8 at 10-11 (https://www.kickstarter.com/projects/anycubic-official/anycubic-p1-industrial-grade-prosumer-resin-3d-printer) (same).  Anycubic instructed social media influencers to infringe by using the P1 printer and to promote further infringing use and sales by making videos using the P1 printer to post on YouTube, Facebook, Instagram, and TikTok.  These marketing materials highlight the infringing aspects of the P1 printer, including the wave release film and the Dynamic Balance 3.0 System, which continuously monitors peel force during layer separation and automatically adjusts accordingly.

38.     For example, Anycubic imported P1 printers into the United States to send to "BuildDanielBuild"

(https://www.youtube.com/channel/UC1E33EEFgZ0i6GNbj7SFSkg/about) and "The Edge of Tech" (https://www.youtube.com/channel/UC1Ak7Ir1WMOWauY_oH00-Qg/about) to create videos of the P1 printer and post them to YouTube and elsewhere.  According to the YouTube "About" profiles of BuildDanielBuild and The Edge of Tech, both are located in the United States.





Both posted videos of the P1 printer with the infringing aspects, as explained herein.  *See*, *e.g.*,

https://www.youtube.com/watch?v=mYOdenjNdTM,

https://www.youtube.com/watch?v=jr1ySZQDDDs,

https://www.youtube.com/watch?v=TEUr3DRUYMY.

39.    The Anycubic Photon Mono M7 Max ("Mono M7 Max"), Anycubic Photon

Mono M7 Pro ("Mono M7 Pro"), and Anycubic Photon Mono 4 ("Mono 4") also infringe the

Asserted Patents as set forth below.  Anycubic uses, sells, offers for sale and imports into the

United States the Mono M7 Max, Mono M7 Pro and Mono 4 printers.  Ex. 12

(https://store.anycubic.com/products/photon-mono-m7-

max?_sasdk=dMTljMTBiMTljOWIxMmVmLTBiM2ZmYjgxNGM5ZmRhLTI2MDYxZDUx

LTE0NzQ1NjAtMTljMTBiMTljOWMyMWJh) (Anycubic store webpage for Mono M7 Max

showing "Shipping" options for US); Ex. 13 (https://store.anycubic.com/products/photon-

mono-m7-pro?_sasdk=dMTljMTBiMTljOWIxMmVmLTBiM2ZmYjgxNGM5ZmRhL

TI2MDYxZDUxLTE0NzQ1NjAtMTljMTBiMTljOWMyMWJh) (Anycubic store webpage for

Mono M7 Pro showing "Shipping & Adapter" options for US); Ex. 14

(https://store.anycubic.com/products/photon-mono-4) (Anycubic store webpage for Mono 4

showing "Shipping & Adapter" options for US).

40.    The Mono M7 Max, Mono M7 Pro and Mono 4 printers are 3D printers for

printing using resin, which is a photosensitive material.  They each contain a light source at the

base of the printer below the solidification substrate.  The solidification substrate is an LCD

panel.  They each use a resin tank to hold the resin during printing, which is comprised of a

frame and transparent, permeable film at the base of the frame.  The assembled resin tank sits

atop the solidification base.

41.    On information and belief, Anycubic incorporated SprintRay's technology into

the design for its infringing P1 printer.  On information and belief, Anycubic has a practice of

monitoring the products of its competitors and then developing products that incorporate

features from its competitors' products.

42.    Just as SprintRay markets its patent practicing products to dental professionals,

Anycubic now markets its P1 printer to dental professionals, including by advertising its Dual

Kit for high end resins.

43.    SprintRay demonstrated its PRO 2 3D Printer, which practices the Asserted

Patents, as well as its other 3-D printing technology and capabilities at industry trade shows,

such as LMT Lab Day Chicago (Feb. 20–22, 2025) ("LMT Chicago 2025").  LMT Chicago is

a trade show for dental professionals, at which 3-D printing technology is regularly exhibited.

SprintRay marked as patent pending or with its patent marking website its products that it demonstrated and offered for sale at LMT Chicago 2025.  Ex. 5 https://sprintray.com/patents/).

44.     On January 20, 2026, SprintRay informed Kickstarter in writing that Anycubic's P1 Printer infringes SprintRay's '316 Patent.  SprintRay requested that Kickstarter immediately remove the P1 printer from its website to avoid ongoing infringement. Kickstarter refused to do so.

45.     As a result of Anycubic's knowledge of SprintRay's Asserted Patents, including through Anycubic's monitoring of its direct competitors in the market, including SprintRay's patent-practicing products that are marked with SprintRay's patents, through Anycubic's ongoing infringement after SprintRay contacted Kickstarter to remove Anycubic's P1 Printer, and after Anycubic's receipt of this Complaint, Anycubic is aware that its products are infringing SprintRay's Asserted Patents and Anycubic's infringement is willful.

## COUNT I
### (Direct Infringement of the '316 Patent)

46.     SprintRay repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

47.     Anycubic has infringed and continues to infringe multiple claims of the '316 Patent, including for example Claim 1, in violation of 35 U.S.C. § 271(a), without the permission, consent, authorization, or license of Plaintiff.  Anycubic is importing at least the P1 and Mono M7 Max printers into the United States, selling and offering for sale in the United States at least the P1 and Mono M7 Max printers on Anycubic.com, and sold and offered for sale the P1 on Kickstarter.

48.     Anycubic's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

49. By way of example of Anycubic's infringement of the '316 Patent, Anycubic's P1 and Mono M7 Max printers meet all of the limitations of Claim 1 of the '316 Patent. Claim 1 recites the following limitations:

> A device for producing at least one three-dimensional object by solidifying a solidifiable material, comprising:
>
>> a device for supply of energy to a building region, the energy supply device being capable of solidifying the solidifiable material;
>>
>> an object carrier capable of carrying the object to be produced; a solidifiable material carrier/provider being arranged to provide solidifiable material at least in the building region, wherein the building region is between the object carrier and the device for supply of energy; and
>>
>> a sensor arranged to sense or measure and output a signal indicative of a condition selected from the group consisting of (i) a separation force of the object carrier from a building plane in the building region between the object carrier and the device for supply of energy, and ii) a separation force of the solidifiable material carrier/provider from the building plane between the object carrier and the device for supply of energy; and
>>
>> a controller configured to initiate the building of the at least one three-dimensional object based on an initial set of build parameters, to receive the signal indicative of the condition from the at least one sensor during the building of the at least one three-dimensional object and to adjust the value of at least one build parameter included in the set of build parameters from an initial value to an adjusted value based on the received signal, wherein the at least one build parameter to be adjusted includes at least one build parameter corresponding to a distance of the object carrier from the building plane in the building region.

50. The P1 and Mono M7 Max printers are devices for printing three-dimensional objects, including by solidifying resin. They comprise a UV light source to supply energy to the build region, on which the resin is solidified during the printing process. They also include a build plate that carries the object as it is being built, up and down the Z axis, in and out of the resin tank. The resin tanks provide resin to the build zone.

**P1 printer**



*See* https://www.youtube.com/watch?v=tZS_8B8a-OA (9:21).



*See* https://www.youtube.com/watch?v=CKjUmzmOkXY&t=38s (7:19) (annotated).

**Mono M7 Max**



Ex. 15 at 1-2 (https://wiki.anycubic.com/en/resin-3d-printer/anycubic-photon-mono-m7-max?_sasdk=dMTljMTBiMTljOWIxMmVmLTBiM2ZmYjgxNGM5ZmRhLTI2MDYxZDUxLTE0NzQ1NjAtMTljMTBiMTljOWMyMWJh).

51.     The P1 printer includes Anycubic's "Dynamic Release 3.0."  With Dynamic Release 3.0, a sensor monitors in real time the layer separation force and signals the P1 printer based on the monitored measurements.  The P1 printer also includes a control panel to set the parameters for building a 3D object based on, for example, CAD drawings for the object,

including orientation and slicers for placing supports for the object while it is being printed. Based on the real-time monitoring from at least one sensor of the layer separation forces, the P1's controller adjusts the value of build parameters, including the lift height parameter which corresponds to a distance of the object carrier from the building plane.



Ex. 16 at 21 (https://www.anycubic.com/en/Photon-P1).

52.    The Mono M7 Max printer includes Anycubic's "Intelligent Release 2.0."  With Intelligent Release 2.0, a mechanical sensor monitors the layer separation force and signals the Mono M7 Max printer based on the monitored measurements.  The Mono M7 Max printer also includes a control panel to set the parameters for building a 3D object based on, for example, CAD drawings for the object, including orientation and slicers for placing supports for the object while it is being printed.  Based on the real-time monitoring from at least one sensor of the layer separation forces, the Mono M7 Max's controller dynamically adjusts the value of build parameters, including the lifting height of each layer which corresponds to a distance of the object carrier from the building plane.



Ex. 17 at 6 (https://www.anycubic.com/en/Photon-m7-max).

53.    Anycubic's infringement of the '316 Patent has injured and continues to injure SprintRay in an amount to be proven at trial, but not less than a reasonable royalty.

54.    Anycubic's actions are willful, blatant and in egregious disregard for SprintRay's patent rights.  Anycubic's infringement has caused and is continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

55.    Anycubic acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '316 Patent, justifying an award to SprintRay of increased damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred under 35 U.S.C. § 285.

56.    SprintRay is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284 and 285 for Anycubic's direct infringement of the '316 Patent.

## COUNT II
### (Indirect Infringement of the '316 Patent)

57.     SprintRay repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

58.     As discussed above, Anycubic knew about SprintRay's patents.  Anycubic knew or was willfully blind to its infringement of the '316 Patent and continues to be willfully blind after its receipt of this Complaint and, on information and belief, after being informed of SprintRay's request that Kickstarter take down its offering for the P1 Printer.

59.     In addition to directly infringing the '316 Patent, as discussed above with respect to Count I, Anycubic knew or was willfully blind to the fact that it was inducing infringement of the '316 Patent under 35 U.S.C. § 271(b) by instructing, encouraging, and directing third parties, including its customers and paid promotional users, to directly infringe by using the Accused Products in the United States and posting videos of such use to various social media platforms as discussed above.

60.     Anycubic contributorily infringes the '316 Patent pursuant to 35 U.S.C. § 271(c) because it has imported and offered for sale the Mono M7 Max, P1, the Dual Kit, and replacement wave release film that act as material components of the claimed inventions of the '316 Patent.  Anycubic has known or was willfully blind to the fact that it is contributing to the infringement of one or more claims of the '316 Patent.  In particular, Anycubic knows that its products are particularly suited to be used in an infringing manner.  Anycubic's Mono M7 Max, P1, Dual Kit, and replacement wave release films are not staple articles or commodities of commerce.  They are highly specialized equipment that are only used for 3D printing.  As discussed above, the Mono M7 Max and P1 printers infringe when used for 3-D printing.

Therefore, there is no substantial non-infringing use for the Mono M7 Max, P1, Dual Kit, and replacement wave release films.

61.     Anycubic knowingly and actively aided and abetted, encouraged, and contributed to the direct infringement of the '316 Patent by instructing and encouraging its customers, purchasers, users, vendors, partners, and manufacturers to meet the elements of the '316 Patent with the Accused Products, as described above.  Because the Mono M7 Max and P1 infringe whenever they are used, Anycubic's acts to encourage its customers to buy and use the Mono M7 Max and P1 and provision of instructions and support on how to use the Accused Products necessarily aides, abets, and encourage direct infringement.  Anycubic does so through direct communications and providing the Accused Products as part of paid promotions (*see*, *e.g.*, YouTube user videos discussed above), and customer support regarding how to install and configure the Accused Products, and by advertising and promoting the use of the Accused Products in an infringing manner.  *See*, *e.g.*, Exs. 7, 8, 15-17.

62.     Anycubic's indirect infringement of the '316 Patent has injured and continues to injure SprintRay in an amount to be proven at trial, but not less than a reasonable royalty.  SprintRay's actions are willful, blatant, and in egregious disregard for SprintRay's patent rights.  Anycubic's indirect infringement has caused and is continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

63.     Anycubic acted recklessly, willfully, wantonly, and deliberately engaged in acts of indirect infringement of the '316 Patent, justifying an award to SprintRay of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

## COUNT III
### (Direct Infringement of the '355 Patent)

64.     SprintRay repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

65.     Anycubic has infringed and continues to infringe multiple claims of the '355 Patent, including for example Claim 1, in violation of 35 U.S.C. § 271(a), without the permission, consent, authorization, or license of Plaintiff.  Anycubic is importing at least the Mono M7 Max, Mono M7 Pro, Mono 4 and P1 printers into the United States, selling and offering for sale in the United States at least the Mono M7 Max, Mono M7 Pro, Mono 4 and P1 printers on Anycubic.com, and sold and offered for sale the P1 on Kickstarter.

66.     Anycubic's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

67.     By way of example of Anycubic's infringement of the '355 Patent, Anycubic's Mono M7 Max, Mono M7 Pro, Mono 4 and P1 printers meet all of the limitations of Claim 1 of the '355 Patent.  Claim 1 recites the following limitations:

> A multi-layer assembly for making a three-dimensional object by solidifying a solidifiable material, comprising:
>
> > a rigid or semi-rigid solidification substrate assembly comprising a frame and a rigid or semi-rigid translucent solidification substrate disposed in the frame;
> >
> > a film assembly, wherein the rigid or semi-rigid solidification substrate assembly is connected to the film assembly, and the film assembly includes at least one frame and a film disposed in the at least one frame.

68.     The Mono M7 Max, Mono M7 Pro, Mono 4 and P1 printers include a multi-layer assembly for making a 3-D object by solidifying resin, comprising a translucent LCD substrate disposed within a frame for the substrate.  For the P1 printer, the LCD substrate can also be replaced by inserting a new LCD substrate into the LCD frame.

**P1 printer**



*See* https://www.youtube.com/watch?v=tZS_8B8a-OA (9:18) (annotated).



*See* https://www.youtube.com/watch?v=tZS_8B8a-OA (9:21).



*See* https://www.youtube.com/watch?v=dzHkPJQAEzk&t=2s (1:31).

**Mono M7 Max**



Ex. 15 at 1-2 (https://wiki.anycubic.com/en/resin-3d-printer/anycubic-photon-mono-m7-max?_sasdk=dMTljMTBiMTljOWIxMmVmLTBiM2ZmYjgxNGM5ZmRhLTI2MDYxZDUxLTE0NzQ1NjAtMTljMTBiMTljOWMyMWJh).

## **Mono M7 Pro**



Ex. 18 at 25 (https://www.anycubic.com/en/photon-m7-pro).

## **Mono 4**



*See* https://www.youtube.com/watch?v=41HPoIEox_Y&list=TLGG5aMUsxvGKlYx
NzAyMjAyNg&t=15s (0:16).

69.     The Mono M7 Max, Mono M7 Pro, Mono 4 and P1 printers each comprise a
film assembly connected to a rigid solidification substrate assembly, including for example, by
latching or screwing into place the resin tank such that it is connected to the LCD substrate.

**P1 printer**

70.     In the P1, the resin tank includes a metal frame with an NFEP film disposed in
the frame.



*See* https://www.youtube.com/watch?v=mYOdenjNdTM.  Anycubic also offers for sale the
resin vat frame and integrated NFEP film separately which together comprise the film
assembly.



*See e.g.*, Ex. 9 at 2-3.

## Mono M7 Max & Mono M7 Pro

In the Mono M7 Max and Mono M7 Pro, the resin tank includes a frame with an ACF film disposed in the frame.



29

Ex. 17 at 14 ([https://www.anycubic.com/en/Photon-m7-max](https://www.anycubic.com/en/Photon-m7-max)).



Ex. 19 ([https://wiki.anycubic.com/en/resin-3d-printer/photon-mono-m7-pro/unboxing?_sasdk=dMTljMTBiMTljOWIxMmVmLTBiM2ZmYjgxNGM5ZmRhLTI2MDYxZDUxLTE0NzQ1NjAtMTljMTBiMTljOWMyMWJh](https://wiki.anycubic.com/en/resin-3d-printer/photon-mono-m7-pro/unboxing?_sasdk=dMTljMTBiMTljOWIxMmVmLTBiM2ZmYjgxNGM5ZmRhLTI2MDYxZDUxLTE0NzQ1NjAtMTljMTBiMTljOWMyMWJh)).



Ex. 12 at 13-14 (https://store.anycubic.com/products/photon-mono-m7-max?_sasdk=dMTljMTBiMTljOWIxMmVmLTBiM2ZmYjgxNGM5ZmRhLTI2MDYxZDUxLTE0NzQ1NjAtMTljMTBiMTljOWMyMWJh).

**<u>Mono 4</u>**

In the Mono 4, the resin tank includes a frame with an FEP film disposed in the frame.

2. Install the printing platform and tighten the knob.



### Step 4: Install the resin vat

1. Place in the resin vat, insert the foot pad into the corresponding positioning hole, and tighten the knobs on both sides to complete the installation.



Ex. 20 at 3 (https://wiki.anycubic.com/en/resin-3d-printer/photon-mono-4/unboxing-process?_sasdk=dMTljMTBiMTljOWIxMmVmLTBiM2ZmYjgxNGM5ZmRhLTI2MDYxZD UxLTE0NzQ1NjAtMTljMTBiMTljOWMyMWJh).

# Photon Mono 4 Series Tech Specs

| | Anycubic Photon Mono 4 $189.00 ~~$200.00~~ | Anycubic Photon Mono 4 Ultra $279.00 ~~$300.00~~ |
|---|---|---|
| **Core Printing Performance** | | |
| Printing Volume | 153.4*87*165mm³ (2.2L) | 153.4*87*165mm³ (2.2L) |
| Printing Speed | Max Speed ≈50mm/h; Standard Resin (0.1mm): ≈50mm/h; High-Speed Resin (0.1mm): ≈70mm/h | Max Speed ≈80mm/h; Standard Resin (0.1mm): ≈80mm/h; High-Speed Resin (0.1mm): ≈120mm/h |
| Layer Height Range | 0.03-0.15mm | 0.02-0.15mm |
| X/Y Axis Resolution | 17 × 17μm | 17 × 17μm |
| Light Source | Parallel Matrix Upgrade Light Source | COB Light Source + Fresnel Lens + Light Uniformity Algorithm |
| Light Intensity | ~3000μW /cm² | ≈3500μW /cm² |
| Material Compatibility | High-speed, Water-washable, Standard, ABS-like, and Plant-based Resins, etc | High-speed, Water-washable, Standard, ABS-like, and Plant-based resins, etc |

| | | |
|---|---|---|
| **System & Mechanical Design** | | |
| Build Platform | Laser-engraved Build Plate | Laser-engraved Aluminum Build Plate |
| Z-axis | Single Linear Rail with 30 μm Accuracy | Single Linear Rail with 20 μm Accuracy |
| Release Film | FEP Film | ACF Film |
| Resin Vat | ≈0.39L | ≈0.39L |

| User Experience & Features | | |
|---|---|---|
| Hinged Cover | - | - |
| Operating Screen | 2.8" Touch-Control | 4.3" Touch-Control |
| Air Purifier | Optional Accessory | Optional Accessory |
| LCD Screen | 7-inch Monochrome LCD, 10K Resolution | 7-inch Monochrome LCD, 10K Resolution |
| Anycubic App | Not Supported | Not Supported |

Ex. 14 at 8-9 (https://store.anycubic.com/products/photon-mono-4?_sasdk=dMTljMTBiMTljOWIxMmVmLTBiM2ZmYjgxNGM5ZmRhLTI2MDYxZDUxLTE0NzQ1NjAtMTljMTBiMTljOWMyMWJh).

71.     Anycubic's infringement of the '355 Patent has injured and continues to injury SprintRay in an amount to be proven at trial, but not less than a reasonable royalty. Anycubic's actions are willful, blatant and in egregious disregard for SprintRay's patent rights. Anycubic's infringement has caused and is continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

72.     Anycubic acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '355 Patent, justifying an award to SprintRay of increased damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred under 35 U.S.C. § 285.

73.     SprintRay is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284 and 285 for Anycubic's direct infringement of the '355 Patent.

## COUNT IV
## (Indirect Infringement of the '355 Patent)

74. SprintRay repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

75. As discussed above, Anycubic knew about SprintRay's patents. Anycubic knew or was willfully blind to its infringement of the '355 Patent and continues to be willfully blind after its receipt of this Complaint and, on information and belief, after being informed of SprintRay's request that Kickstarter take down its offering for the P1 printer.

76. In addition to directly infringing the '355 Patent, as discussed above with respect to Count III, Anycubic knew or was willfully blind to the fact that it was inducing infringement of the '355 Patent under 35 U.S.C. § 271(b) by instructing, encouraging, and directing third par-ties, including its customers and paid promotional users, to directly infringe by using the Accused Products in the United States and posting videos of such use to various social media plat-forms as discussed above.

77. Anycubic contributorily infringes the '355 Patent pursuant to 35 U.S.C. § 271(c) because it has imported, sold, and offered for sale the Mono M7 Max, Mono M7 Pro, Mono 4, P1, the Dual Kit, and replacement wave release film that act as material components of the claimed inventions of the '316 Patent. Anycubic has known or was willfully blind to the fact that it is contributing to the infringement of one or more claims of the '355 Patent. In particular, Anycubic knows that its products are particularly suited to be used in an infringing manner. Anycubic's Mono M7 Max, Mono M7 Pro, Mono 4, P1, the Dual Kit, and replacement wave release film are not staple articles or commodities of commerce. They are highly specialized equipment that are only used for 3-D printing. As discussed above, the Mono M7 Max, Mono M7 Pro, Mono 4, and P1 printers infringe when used for 3-D printing.

Therefore, there is no substantial non-infringing use for the Mono M7 Max, P1, Dual Kit, and replacement wave release films.

78.     Anycubic knowingly and actively aided and abetted, encouraged, and contributed to the direct infringement of the '355 Patent by instructing and encouraging its customers, purchasers, users, vendors, partners, and manufacturers to meet the elements of the '355 Patent with the Accused Products, as described above.  Because the Mono M7 Max, Mono M7 Pro, Mono 4, and P1 printers infringe whenever they are used, Anycubic's acts to encourage its customers to buy and use the Mono M7 Max, Mono M7 Pro, Mono 4, and P1 printers and provision of instructions and support on how to use the Accused Products necessarily aides, abets, and encourage direct infringement.  Anycubic does so through direct communications and providing the Accused Products as part of paid promotions (*see*, *e.g.*, YouTube user videos discussed above), and customer support regarding how to install and configure the Accused Products, and by advertising and promoting the use of the Accused Products in an infringing manner.  *See*, *e.g.*, Exs. 7, 8, 12-13, 15-20.

79.     Anycubic's indirect infringement of the '355 Patent has injured and continues to injure SprintRay in an amount to be proven at trial, but not less than a reasonable royalty. SprintRay's actions are willful, blatant, and in egregious disregard for SprintRay's patent rights.  Anycubic's indirect infringement has caused and is continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

80.     Anycubic acted recklessly, willfully, wantonly, and deliberately engaged in acts of indirect infringement of the '355 Patent, justifying an award to SprintRay of increased damages under 35 U.S.C. § 284 and attorney's fees and costs incurred under 35 U.S.C. § 285.

## COUNT V
### (Direct Infringement of the '910 Patent)

81.     SprintRay repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

82.     Anycubic has infringed and continues to infringe multiple claims of the '910 Patent, including for example Claim 1, in violation of 35 U.S.C. § 271(a), without the permission, consent, authorization, or license of Plaintiff.  Anycubic is importing at least the Mono M7 Max, Mono M7 Pro, Mono 4, and P1 printers into the United States, selling and offering for sale in the United States at least the Mono M7 Max, Mono M7 Pro, Mono 4, and P1 printers on Anycubic.com, and sold and offered for sale the P1 on Kickstarter.

83.     Anycubic's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

84.     By way of example of Anycubic's infringement of the '910 Patent, Anycubic's Mono M7 Max, Mono M7 Pro, Mono 4, and P1 printers meet all of the limitations of Claim 1 of the '910 Patent.  Claim 1 recites the following limitations:

A multi-layer system for making a three-dimensional object by solidifying a solidifiable material, comprising:

a rigid or semi-rigid solidification substrate assembly comprising a frame and a rigid or semi-rigid translucent solidification substrate disposed in the frame, wherein the rigid or semi-rigid translucent solidification substrate comprises a first surface and a second surface opposite the first surface;

a film assembly including at least one film frame and at least one film disposed in the at least one film frame, wherein the at least one film comprises a first surface and a second surface opposite the first surface of the at least one film, wherein the first surface of the at least one film is adjacent to and in non-adhesive contact with the first surface of the rigid or semi-rigid translucent solidification substrate.

85.     The Mono M7 Max, Mono M7 Pro, Mono 4, and P1 printers each include a multi-layer assembly for making a 3-D object by solidifying resin, comprising a translucent LCD substrate disposed within a frame for the substrate.  As shown in the screenshots below, the LCD substrate comprises a first surface on which the 3-D object is built and a second surface opposite that surface that is exposed to the light source.



*See* https://www.youtube.com/watch?v=tZS_8B8a-OA (9:18) (annotated).



*See* https://www.youtube.com/watch?v=tZS_8B8a-OA (9:21).



*See* https://www.youtube.com/watch?v=dzHkPJQAEzk&t=2s (1:31).



# Anycubic Photon Mono M7 Max
## Product Details

Ex. 15 at 1-2 (https://wiki.anycubic.com/en/resin-3d-printer/anycubic-photon-mono-m7-max?_sasdk=dMTljMTBiMTljOWIxMmVmLTBiM2ZmYjgxNGM5ZmRhLTI2MDYxZDUxLTE0NzQ1NjAtMTljMTBiMTljOWMyMWJh).

## Mono M7 Pro



Ex. 18 at 25 (https://www.anycubic.com/en/photon-m7-pro).

## Mono 4



*See* https://www.youtube.com/watch?v=41HPoIEox_Y&list=TLGG5aMUsxvGKlYxN zAyMjAyNg&t=15s (0:16).

86. The Mono M7 Max, Mono M7 Pro, Mono 4, and P1 printers each comprise a film assembly connected to a rigid solidification substrate assembly, including for example, by latching or screwing the resin tank into place such that it is connected to the LCD substrate. The Mono M7 Max, Mono M7 Pro, Mono 4, and P1 printers each include a frame with a film disposed in the frame. The film comprises a first surface that is adjacent to the LCD substrate's first surface and sits atop the LCD substrate. It is locked into place using two side latches or two plastic screws. The films comprise a second surface opposite the first surface over which the resin is disposed. The film is NFEP for the P1 and ACF for the Mono M7 Max and Pro and the Mono 4.

**P1 printer**



*See* https://youtu.be/mYOdenjNdTM?si=lr9vfkXLvY6EDW89 (5:33).

Anycubic also offers for sale the resin vat frame and integrated NFEP film separately which together comprise the film assembly.

42



*See e.g.*, Ex. 9 at 2-3.

**Mono M7 Max & Mono M7 Pro**



Ex. 17 at 14 (https://www.anycubic.com/en/Photon-m7-max).





Ex. 19 (https://wiki.anycubic.com/en/resin-3d-printer/photon-mono-m7-pro/unboxing?_sasdk=dMTljMTBiMTljOWIxMmVmLTBiM2ZmYjgxNGM5ZmRhLTI2MDYxZDUxLTE0NzQ1NjAtMTljMTBiMTljOWMyMWJh).



Ex. 12 at 13-14 (https://store.anycubic.com/products/photon-mono-m7-max?_sasdk=dMTljMTBiMTljOWIxMmVmLTBiM2ZmYjgxNGM5ZmRhLTI2MDYxZDUxLTE0NzQ1NjAtMTljMTBiMTljOWMyMWJh).

**Mono 4**

2. Install the printing platform and tighten the knob.



**Step 4: Install the resin vat**

1. Place in the resin vat, insert the foot pad into the corresponding positioning hole, and tighten the knobs on both sides to complete the installation.



Ex. 20 at 3 (https://wiki.anycubic.com/en/resin-3d-printer/photon-mono-4?_sasdk=dMTljMTBiMTljOWIxMmVmLTBiM2ZmYjgxNGM5ZmRhLTI2MDYxZDUxLTE0NzQ1NjAtMTljMTBiMTljOWMyMWJh).

# Photon Mono 4 Series Tech Specs

| | Anycubic Photon Mono 4 $189.00 ~~$399.00~~ | Anycubic Photon Mono 4 Ultra $279.00 ~~$399.00~~ |
|---|---|---|
| **Core Printing Performance** | | |
| Printing Volume | 153.4*87*165mm² (2.2L) | 153.4*87*165mm² (2.2L) |
| Printing Speed | Max Speed ≈50mm/h; Standard Resin (0.1mm): ≈50mm/h; High-Speed Resin (0.1mm): ≈70mm/h | Max Speed ≈80mm/h; Standard Resin (0.1mm): ≈80mm/h; High-Speed Resin (0.1mm): ≈120mm/h |
| Layer Height Range | 0.03-0.15mm | 0.02-0.15mm |
| X/Y Axis Resolution | 17 × 17μm | 17 × 17μm |
| Light Source | Parallel Matrix Upgrade Light Source | COB Light Source + Fresnel Lens + Light Uniformity Algorithm |
| Light Intensity | ~3000μW /cm² | ≈3500μW /cm² |
| Material Compatibility | High-speed, Water-washable, Standard, ABS-like, and Plant-based Resins, etc | High-speed, Water-washable, Standard, ABS-like, and Plant-based resins, etc |

| | | |
|---|---|---|
| **System & Mechanical Design** | | |
| Build Platform | Laser-engraved Build Plate | Laser-engraved Aluminum Build Plate |
| Z-axis | Single Linear Rail with 30 μm Accuracy | Single Linear Rail with 20 μm Accuracy |
| Release Film | FEP Film | ACF Film |
| Resin Vat | ≈0.39L | ≈0.39L |

| User Experience & Features | | |
| --- | --- | --- |
| Hinged Cover | - | - |
| Operating Screen | 2.8" Touch-Control | 4.3" Touch-Control |
| Air Purifier | Optional Accessory | Optional Accessory |
| LCD Screen | 7-inch Monochrome LCD, 10K Resolution | 7-inch Monochrome LCD, 10K Resolution |
| Anycubic App | Not Supported | Not Supported |

Ex. 14 at 8-9 (https://store.anycubic.com/products/photon-mono-4?_sasdk=dMTljMTBiMTljOWIxMmVmLTBiM2ZmYjgxNGM5ZmRhLTI2MDYxZDUxLTE0NzQ1NjAtMTljMTBiMTljOWMyMWJh).

87.    Anycubic's infringement of the '910 Patent has injured and continues to injury SprintRay in an amount to be proven at trial, but not less than a reasonable royalty. Anycubic's actions are willful, blatant and in egregious disregard for SprintRay's patent rights. Anycubic's infringement has caused and is continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

88.    Anycubic acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '910 Patent, justifying an award to SprintRay of increased damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred under 35 U.S.C. § 285.

89.    SprintRay is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284 and 285 for Anycubic's direct infringement of the '910 Patent.

## COUNT VI
### (Indirect Infringement of the '910 Patent)

90.    SprintRay repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

91.    As discussed above, Anycubic knew about SprintRay's patents.  Anycubic knew or was willfully blind to its infringement of the '910 Patent and continues to be willfully blind after receipt of this Complaint and, on information and belief, after being informed of SprintRay's request that Kickstarter take down its offering for the P1 printer.

92.    In addition to directly infringing the '910 Patent, as discussed above with respect to Count V, Anycubic knew or was willfully blind to the fact that it was inducing infringement of the '910 Patent under 35 U.S.C. § 271(b) by instructing, encouraging, and directing third parties, including its customers and paid promotional users, to directly infringe by using the Accused Products in the United States and posting videos of such use to various social media platforms as discussed above.

93.    Anycubic contributorily infringes the '910 Patent pursuant to 35 U.S.C. § 271(c) because it has imported and offered for sale the Mono M7 Max, Mono M7 Pro, Mono 4, P1, the Dual Kit, and replacement wave release film that act as material components of the claimed inventions of the '910 Patent.  Anycubic has known or was willfully blind to the fact that it is contributing to the infringement of one or more claims of the '910 Patent.  In particular, Anycubic knows that its products are particularly suited to be used in an infringing manner.  Anycubic's Mono M7 Max, Mono M7 Pro, Mono 4, P1, the Dual Kit, and replacement wave release film are not staple articles or commodities of commerce.  They are highly specialized equipment that are only used for 3-D printing.  As discussed above, the Mono M7 Max, Mono M7 Pro, Mono 4, and P1 printers infringe when used for 3-D printing.

Therefore, there is no substantial non-infringing use for the Mono M7 Max, P1, Dual Kit, and replacement wave release films.

94.     Anycubic knowingly and actively aided and abetted, encouraged, and contributed to the direct infringement of the '910 Patent by instructing and encouraging its customers, purchasers, users, vendors, partners, and manufacturers to meet the elements of the '910 Patent with the Accused Products, as described above.  Because the Mono M7 Max, Mono M7 Pro, Mono 4, and P1 printers infringe whenever they are used, Anycubic's acts to encourage its customers to buy and use the Mono M7 Max, Mono M7 Pro, Mono 4, and P1 printers and provision of instructions and support on how to use the Accused Products necessarily aides, abets, and encourage direct infringement.  Anycubic does so through direct communications and providing the Accused Products as part of paid promotions (*see*, *e.g.*, YouTube user videos discussed above), and customer support regarding how to install and configure the Accused Products, and by advertising and promoting the use of the Accused Products in an infringing manner.  *See*, *e.g.*, Exs. 7, 8, 12-13, 15-20.

95.     Anycubic's indirect infringement of the '910 Patent has injured and continues to injure SprintRay in an amount to be proven at trial, but not less than a reasonable royalty. SprintRay's actions are willful, blatant, and in egregious disregard for SprintRay's patent rights.  Anycubic's indirect infringement has caused and is continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

96.     Anycubic acted recklessly, willfully, wantonly, and deliberately engaged in acts of indirect infringement of the '910 Patent, justifying an award to SprintRay of increased damages under 35 U.S.C. § 284 and attorney's fees and costs incurred under 35 U.S.C. § 285.

## COUNT VII
### (Direct Infringement of the '555 Patent)

97.     SprintRay repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

98.     Anycubic has infringed and continues to infringe multiple claims of the '555 Patent, including for example Claim 1, in violation of 35 U.S.C. § 271(a), without the permission, consent, authorization, or license of Plaintiff.  Anycubic is importing at least the P1 into the United States, selling and offering for sale in the United States at least the P1 on Anycubic.com, and sold and offered for sale the P1 on Kickstarter.

99.     Anycubic's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

100.     By way of example of Anycubic's infringement of the '555 Patent, Anycubic's P1 meets all of the limitations of Claim 1 of the '555 Patent.  Claim 1 recites the following limitations:

A substrate assembly for use with a three-dimensional printer reservoir, the reservoir including a frame defining a cavity adapted to be at least partially filled with a photosensitive liquid, the substrate assembly comprising:

a first layer comprising a permeable film adapted to be configured with a lower portion of the cavity and to hold the photosensitive liquid within the cavity;

a second layer configured below the first layer; and

a third layer comprising a permeable substrate disposed between the first layer and the second layer.

101.     The Accused Products include a substrate assembly for use with a 3-D printer reservoir.  The P1 includes a resin tank comprising a frame and a film to form a reservoir that is at least partially filled with resin, a photosensitive liquid, during 3D printing.



*See* https://youtu.be/mYOdenjNdTM?si=lr9vfkXLvY6EDW89 (5:33).

102.    The substate is the surface on which the 3-D object is printed, and the substrate assembly of the P1 printer comprises three layers.  The first layer comprises a permeable NFEP film, which is preattached to the release film frame, to form the cavity in which the resin is poured.

103.    The second layer of the substrate assembly is configured below the NFEP film and comprises the transparent LCD screen on which the 3-D objects are built.



*See* https://www.youtube.com/watch?v=tZS_8B8a-OA (9:18) (annotated).

104.    The third layer of the substrate assembly comprises the wave release film of the P1 printer, which is at least light permeable and is layered over the LCD screen.  The resin tank, including its NFEP film, sits atop the wave release film.



*See* https://www.youtube.com/watch?v=sid0vV_51hA&t=2s (7:42).

105.    Anycubic's infringement of the '555 Patent has injured and continues to injury SprintRay in an amount to be proven at trial, but not less than a reasonable royalty. Anycubic's actions are willful, blatant and in egregious disregard for SprintRay's patent rights. Anycubic's infringement has caused and is continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

106.    Anycubic acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '555 Patent, justifying an award to SprintRay of increased damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred under 35 U.S.C. § 285.

107.    SprintRay is entitled to injunctive relief, damages, and any other relief in accordance with 35 U.S.C. §§ 283, 284 and 285 for Anycubic's direct infringement of the '555 Patent.

## COUNT VIII
### (Indirect Infringement of the '555 Patent)

108.    SprintRay repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

109.    As discussed above, Anycubic knew about SprintRay's patents.  Anycubic knew or was willfully blind to its infringement of the '555 Patent and continues to be willfully blind after its receipt of this Complaint and, on information and belief, after being informed of SprintRay's request that Kickstarter take down its offering for the P1 printer.

110.    In addition to directly infringing the '555 Patent, as discussed above with respect to Count VII, Anycubic knew or was willfully blind to the fact that it was inducing infringement of the '555 Patent under 35 U.S.C. § 271(b) by instructing, encouraging, and directing third parties, including its customers and paid promotional users, to directly infringe by using the Accused Products in the United States and posting videos of such use to various social media platforms as discussed above.

111.    Anycubic contributorily infringes the '555 Patent pursuant to 35 U.S.C. § 271(c) because it has imported and offered for sale the P1, the Dual Kit, and replacement wave release film that act as material components of the claimed inventions of the '555 Patent. Anycubic has known or was willfully blind to the fact that it is contributing to the infringement of one or more claims of the '555 Patent.  In particular, Anycubic knows that its products are particularly suited to be used in an infringing manner.  Anycubic's P1, Dual Kit, and replacement wave release films are not staple articles or commodities of commerce.  They are

highly specialized equipment that are only used for 3-D printing. As discussed above, the P1 printer infringes when used for 3-D printing. Therefore, there is no substantial non-infringing use for the P1, Dual Kit, and replacement wave release films.

112.    Anycubic knowingly and actively aided and abetted, encouraged, and contributed to the direct infringement of the '555 Patent by instructing and encouraging its customers, purchasers, users, vendors, partners, and manufacturers to meet the elements of the '555 Patent with the Accused Products, as described above. Because the P1 infringes whenever it is used, Anycubic's acts to encourage its customers to buy and use the P1 and provision of instructions and support on how to use the Accused Products necessarily aides, abets, and encourage direct infringement. Anycubic does so through direct communications and providing the Accused Products as part of paid promotions (*see*, *e.g.*, YouTube user videos discussed above), and customer support regarding how to install and configure the Accused Products, and by advertising and promoting the use of the Accused Products in an infringing manner. *See*, *e.g.*, Exs. 7, 8, 16.

113.    Anycubic's indirect infringement of the '555 Patent has injured and continues to injure SprintRay in an amount to be proven at trial, but not less than a reasonable royalty. SprintRay's actions are willful, blatant, and in egregious disregard for SprintRay's patent rights. Anycubic's indirect infringement has caused and is continuing to cause damage and irreparable injury to SprintRay, and SprintRay will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

114.    Anycubic acted recklessly, willfully, wantonly, and deliberately engaged in acts of indirect infringement of the '555 Patent, justifying an award to SprintRay of increased damages under 35 U.S.C. § 284 and attorney's fees and costs incurred under 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE, SprintRay prays for judgment and relief as follows:

A.      An entry of judgment holding that Anycubic has infringed and is infringing the '316, '355, '910, and '555 Patents; and has induced infringement and is inducing infringement of the '316, '355, '910, and '555 Patents; and has contributorily infringed and continues to contributorily infringe the '316, '355, '910, and '555 Patents;

B.      A preliminary and permanent injunction against Anycubic and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing, inducing, and contributing to the infringement of the '316, '355, '910, and '555 Patents and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

C.      An award to SprintRay of such damages as it shall prove at trial against Anycubic to compensate SprintRay for Anycubic's infringement of the '316, '355, '910, and '555 Patents that will account for infringement up to trial based on the relevant information and financials produced, where said damages will be no less than a reasonable royalty;

D.      A determination that Anycubic's infringement has been willful, wanton, and deliberate, and that the damages against it be trebled on this basis or for any other basis in accordance with the law;

E.      An award to SprintRay of increased damages under 35 U.S.C. § 284 based on, *inter alia*, Anycubic's willful infringement the '316, '355, '910, and '555 Patents;

F.      A finding that this case is "exceptional" and an award to SprintRay of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

G.      An accounting of all infringing sales and revenues, together with post judgment

interest and prejudgment interest from the first date of infringement of the '316, '355, '910,

and '555 Patents; and

H.      Such further and other relief as the Court may deem proper and just.

## **JURY DEMAND**

SprintRay demands a jury trial on all issues so triable.


OF COUNSEL:                                          POTTER ANDERSON & CORROON LLP

Lisa Kobialka                                        By: */s/ Philip A. Rovner*
Christina M. Finn                                         Philip A. Rovner (#3215)
HERBERT SMITH FREEHILLS                                   Nicole K. Pedi (#6236)
   KRAMER (US) LLP                                        Hercules Plaza
333 Twin Dolphin Drive, Suite 700                        1313 North Market Street, 6th Floor
Redwood Shores, CA 94065                                  P.O. Box 951
Tel.: (650) 752-1700                                      Wilmington, Delaware 19801
                                                          provner@potteranderson.com
Aaron M. Frankel                                          npedi@potteranderson.com
HERBERT SMITH FREEHILLS
   KRAMER (US) LLP                                        *Attorneys for Plaintiff SprintRay, Inc.*
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100

Dated:  February 17, 2026
12722094